IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDITH MICKELSON, a Citizen and
Resident of the Commonwealth of
Kentucky,

Plaintiff,

v.

JEROME H. MICKELSON, a Citizen
and Resident of the State of
Illinois, Individually and as
Trustee for the Trust of Ralph
R. Mickelson, the Trust of
Shirley Mickelson, and Certain
Related Trusts,

Defendant.

Case No. 11 C 5061

Hon. Harry D. Leinenweber

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jerome H. Mickelson's (hereinafter, the "Trustee") Motion for Summary Judgment (ECF No. 38) and Plaintiff Judith Mickelson's (hereinafter, the "Plaintiff") Motion for Sanctions (ECF No. 46). For the reasons stated herein, the Trustee's Motion is granted and Plaintiff's Motion is denied.

## I. BACKGROUND

The facts of this case stem from an unpleasant family dispute involving the administration of several trusts. Ralph Mickelson ("Bob") and Shirley Mickelson ("Shirley") had four children: Jerome, Judy, Jonathan and Julian. Bob was a senior partner at

Rudnick & Wolfe (now DLA Piper, LLP) for more than 30 years. He hired colleagues to draft estate planning documents for both him and his wife. From 1996 until their deaths, Renee Schoenberg ("Schoenberg") of Rudnick & Wolfe advised Bob and Shirley on estate planning matters. Bob died in 2001 and Shirley died in 2005. At the time of Shirley's death, the pretax Mickelson estate (the "Estate") had a value of $7,029,392.

Bob and Shirley's estate and trust instruments create an estate structure involving upper level trusts to be funded with the residues from the Mickelson parent estates as well as three subtrusts for each child to be funded with distributions from the upper level trusts. Bob and Shirley's trust instruments also appointed their eldest son, Jerome, to oversee the distribution of their Estate as both executor and trustee of the trusts. Since Bob's death, Jerome has acted in those roles, and has done so under the advice and counsel of Schoenberg. The trust instruments grant him discretion as to the division and distribution of trust property and support payments, and provide that the Trustee cannot be held personally liable for any obligation or liability of the Estate. He is not liable for errors in judgment, and instead can only be held liable for willful default, wrongdoing or gross negligence. He is also to be reimbursed for expenses incurred administering the trusts.

Since 1989, Plaintiff has owned a 98-acre horse farm (the "Farm") on which she breeds, trains and sells race horses. Plaintiff owns the Farm through 8765 Mundy's Landing Corporation ("Mundy's"), of which she is the sole shareholder. In 1989, Bob lent Mundy's $180,000 to purchase the farm. In 1998, Bob's loan to Mundy's was refinanced by LaSalle Bank National Association ("LaSalle"), as evidenced by an interest bearing note (the "Mundy's Note"). The note was secured by a first mortgage on the Farm and was guaranteed by Bob. Bob lent Plaintiff and Mundy's approximately $188,000 to cover Farm expenses, and advanced Plaintiff another $71,879 to make all the monthly payments under the Mundy's Note during Bob's lifetime.

When Bob passed away, the fate of the Farm appeared to have been in question. To prevent LaSalle Bank from filing a claim against the Estate on Bob's guaranty of the Mundy Note or from foreclosing on the Farm, the Estate, with Judy's approval, purchased the Mundy's Note and mortgage from LaSalle Bank for $133,742.66 in late 2001.

In early 2002, discussions began among the family regarding a proposed settlement to address Plaintiff's debts to the Estate. Plaintiff's attorney at the time, Gerald Mannix, was involved in these discussions, which included correspondence about Plaintiff's debts to the Estate and outlined terms of a potential family settlement.

In 2003 the Mickelson family finalized a settlement regarding Plaintiff and Mundy's debts to the Estate (the "2003 Agreement"), which at the time totaled $505,841.02.  Prior to signing the 2003 Agreement, Plaintiff participated in a conference call with the other beneficiaries and Schoenberg, who drafted the agreement, to discuss the agreement's purposes and effects.  The 2003 Agreement was signed by Plaintiff (for both herself and Mundy's), the other Mickelson children (including the Trustee), and Shirley.

Under the Agreement, Plaintiff:  (1) agreed that her and Mundy's outstanding debts, and any future loans from the Estate, would be set off against her subtrusts; (2) waived inventories and accountings from the Trustee; (3) acknowledged there could be significant passage of time before the allocations of remaining assets would be made to fund the subtrusts; (4) acknowledged she received full disclosure to her satisfaction and that any legal or tax advice she relied on, if any, was from professionals of her choosing; (5) acknowledged that she read and understood the terms of the agreement and that those terms were agreeable to her; and (6) waived any personal liability of the Trustee from any actions related to the 2003 Agreement and the administration of the Estate pursuant to that agreement.

As a result of entering into the 2003 Agreement, Plaintiff avoided foreclosure on her Farm, and was able to use the Farm as security to obtain further loans from the Estate.  Indeed, after

signing the 2003 Agreement, Plaintiff signed a number of notes and loans that incorporated her obligations under the 2003 Agreement. For example, in January 2007, she signed a loan agreement "pursuant to the 2003 Settlement Agreement" for $25,000 in which she acknowledged receiving advice from legal counsel, Robert H. Shadur. In June 2007, Plaintiff received another loan from the Estate of $50,000. In the agreement for that loan Plaintiff reaffirmed the 2003 Agreement and acknowledged that she declined to consult with an attorney but that she understood the loan's terms and conditions.

From March 2008 to the present, three sets of distributions were made to the children's subtrusts totaling an equal value of $1,177,865.60 to each child. Plaintiff's distribution comprised $294,141.29 cash, $159,467.74 debt in Plaintiff's name, and $724,256.57 debt in Mundy's name on Judy's behalf. Debt owed by Plaintiff's brothers to the Estate was allocated similarly to their subtrusts. All four Mickelson children's subtrusts received equal value.

Plaintiff, through her attorney at the time, filed this lawsuit against the Trustee on July 27, 2011. She asserts breach of fiduciary claims against the Trustee, as well as a claim that she entered into various agreements with the Estate under duress. On September 6, 2012, the Court, with Plaintiff's consent, allowed

Plaintiff's counsel to withdraw. She has proceeded *pro se* since. The Trustee now moves for summary judgment.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party, and a fact is "material" if it could affect the outcome of the case. *McKinzy v. Ill. Cent. R.R.*, No. 10 C 2882, 2012 U.S. Dist. LEXIS 138830 at *3-4 (N.D. Ill. Sept. 27, 2012). If the moving party satisfies its burden, the non-moving party must present facts to show a genuine dispute exists to avoid summary judgment. *Id*. at 4. The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Id*.

If a party asserts that a fact cannot be, or is, genuinely disputed, it must support that assertion with citations to materials in the record. FED. R. CIV. P. 56(c)(1). Such materials must be served and filed. L.R. 56.1. If a party fails to support an assertion, the court may consider the fact undisputed, and grant summary judgment if the record supports it. FED. R. CIV. P. 56(e).

## III. **ANALYSIS**

Trustee claims that summary judgment is warranted because Plaintiff failed to comply with Local Rule 56.1 in responding to

Trustee's motion for summary judgment. The Trustee also argues that summary judgment should be granted because (1) Plaintiff's claims are precluded by the 2003 Agreement; (2) Plaintiff's claims are time-barred; and (3) there is no evidence of any breach of fiduciary duties.

## A.  Plaintiff's Failure to Comply with Local Rule 56.1

When addressing summary judgment motions, the Court derives background facts from the parties' Local Rule 56.1 Statements, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposes to prove a disputed fact with admissible evidence." *Young v. Monahan*, No. 07 C 1193, 2009 U.S. Dist. LEXIS 78333 at *4 (N.D. Ill. Aug. 31, 2009) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000)). Local Rule 56.1(a)(3) requires the moving party to provide a statement of material facts as to which the moving party contends there is no genuine issue. *Id.* The non-moving party must admit or deny each factual statement offered by the moving party and designate concisely any material facts that establish a genuine dispute for trial. *Id.* Each party's statement should contain short numbered paragraphs including references to the record, affidavits, and other supporting materials. *Id.*

The Seventh Circuit has held repeatedly that "a district court is entitled to expect strict compliance with Rule 56.1." *See,*

*Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). The purpose of a Local Rule 56.1 Statement is to identify relevant evidence supporting material facts. *Young* 2009 U.S. Dist. LEXIS 78333 at *5. Evidence available to support a Rule 56.1 Statement varies, but affidavits, deposition transcripts and business documents are common supporting materials. *Id.* at *5-6. A litigant's failure to respond to a Rule 56.1 Statement results in the Court considering the uncontested statement as true. *Id.* at *6. The Court may disregard statements and responses that do not cite to materials in the record. *Id.* In addition, a party may not satisfy his Rule 56.1 requirements with "evasive denials that do not fairly meet the substance of the material facts asserted." *Id.* (quoting *Bordelon,* 233 F.3d at 528).

"Although courts must construe *pro se* pleadings liberally, a plaintiff's *pro se* status does not excuse him from complying with these Local Rules." *Id.* Plaintiff here failed to comply. The Trustee served Plaintiff with his Motion for Summary Judgment on December 11, 2012. ECF No. 38. The Court then entered an Order allowing Plaintiff until January 11, 2013 to file a response. ECF No. 44. However, Plaintiff failed to respond until January 15, 2013 with her "Plaintiff's Objection to Summary." *See* ECF No. 51. The Trustee then acknowledged that he had failed to provide Plaintiff with a proper Local Rule 56.2 notice and filed one on January 16, 2013. ECF No. 47. He then moved to give Plaintiff an

additional thirty days to respond to the summary judgment motion. *See* ECF No. 48. The Court granted that motion, and Plaintiff was given another opportunity to respond to the motion by February 21, 2013. ECF No. 55. The Trustee's Local Rule 56.2 notice explained the consequences Plaintiff could face for failing to respond properly to a motion for summary judgment and to a statement of material facts under Federal Rule of Civil Procedure 56(e) and Local Rule 56.1. ECF No. 47 ("If you do not provide the Court with evidence that shows that there is a dispute about the facts, the judge will be required to assume that the defendant's factual contentions are true, and, if the defendant is also correct about the law, your case will be dismissed."). Despite this warning, Plaintiff chose not to file a proper response, and as such, her "Objection to Summary" is the only response the Court received.

"Plaintiff's Objection to Summary" consists of a two-page brief (lacking any legal citations) and three exhibits: (1) Plaintiff's Affidavit; (2) a letter from Wendy Crawford-Schultz of Bluewater Consulting Group, LLC ("Bluewater"), and (3) a document entitled "answer to their pleadings[1]" in which Plaintiff appears to either contest or explain various exhibits attached to the Trustee's Statement of Facts. However, Plaintiff attached no materials in support of her contentions in this "answer." She also did not file a response to the Trustee's Statement of Facts, or any Statement of Additional Facts for the Court to consider.

- 9 -

Keeping in mind the principle that courts construe *pro se* pleadings liberally, the Court reviewed all three documents submitted by Plaintiff in support of her objection to summary judgment. First, Plaintiff's affidavit makes a number of self-serving assertions and legal conclusions that she fails to support with any other materials. For example, Plaintiff claims she is "legally entitled to millions of dollars of trust money, which was stolen by Jerome, which is ongoing and continues." *See, e.g.,* Judith Mickelson Aff., Pl.'s Obj. to Summ., ECF No. 51 Ex. A. She also asserts that the Trustee "continues to employ fraud, lying, to *[sic]* cheating wrongfully prevent me from the money from said so called trust for my benefit and fraudulently incurring large debts, IRS liabilities in my names and in names of fraudulent bank accounts he falsely set up in my name." *Id.* Plaintiff estimates, without any support, that her parents' estate had one hundred million dollars upon their passing, of which she is entitled to twenty million dollars. *Id.* However, Plaintiff has failed to provide support for any of the statements in her affidavit. The Seventh Circuit has held repeatedly that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Broaddus v. Shields,* 665 F.3d 846, 856 (7th Cir. 2011).

The February 2012 letter from Bluewater Consulting Group purports to be a forensic examination of the Trusts requested by

- 10 -

Plaintiff's former counsel during this litigation to determine the amount due to Plaintiff.  It thus appears to be an expert opinion prepared in connection with this case.  There are a number of reasons why this Court declines to give weight to this document.  First, it is unsworn.  "[A]n unsworn and unverified expert report is not Rule 56 evidence that may be relied upon to overcome a motion for summary judgment."  *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.,* 482 F.Supp.2d 1045, 1057 (N.D. Ind. 2007).  Second, it is incomplete.  Missing from the letter is an appendix identifying the materials reviewed by Bluewater in conducting its analysis, as well as seven exhibits.  Pl.'s Opp. to Summ. J. Ex. B, ECF NO. 51 at PageID# 741.  It is thus unclear whether the opinion is based on sufficient facts or data.  *See* FED. R. EVID. 702.  Third, Plaintiff provided no materials establishing that Ms. Crawford-Schultz is qualified to serve as an expert, as required by Rule 702.  *Id.*

Even if the letter did not have these deficiencies, it suffers from substantive problems that would lead the Court to disregard it.  Most notably, the letter states that "[o]ur conclusion is based on . . . the assumption that the 2003 Settlement Agreement is null and void. . . ."  Pl.'s Opp. to Summ. J. Ex. B, ECF NO. 51 at PageID# 741. As described below, the Court concludes that the 2003 Agreement is valid.  For these reasons, the Court gives little weight to the Bluewater letter.

Finally, Plaintiff's "answers to their pleadings[1]" is perhaps the closest Plaintiff comes to filing a response to the Trustee's Rule 56.1 Statement. But instead of addressing the facts put forth in the Rule 56.1 Statement, it addresses some of the supporting exhibits attached to the Trustee's Motion. However, the document is full of conclusory statements, unsupported allegations and even questions. Some entries consist of statements identifying the document or quoting language in the document without any explanation as to the significance of the documents. Frankly, this does not suffice.

> A district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. In short, judges are not like pigs, hunting for truffles buried in briefs.

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (quotations omitted).

Thus, after taking into account that Plaintiff is proceeding *pro se* as well as the additional time the Court granted Plaintiff to respond to Trustee's Summary Judgment Motion, the Court finds it appropriate to grant Defendant's Motion for Summary Judgment. *See, McKinzy,* 2012 U.S. Dist. LEXIS 138830 at *7. Because Plaintiff failed to contest properly the asserted facts, the Court considers the statements in the Trustee's Rule 56.1 Statement to be true. However, even were Plaintiff's failure to comply with Local

Rule 56.1 not grounds to grant summary judgment in Defendant's favor, summary judgment would be appropriate on other grounds.

## B.  2003 Agreement

### 1.  *Illinois Favors Settlement Agreements Among Family*

The Trustee argues that all of Plaintiff's claims are barred by the 2003 Settlement signed by the four Mickelson children, including Plaintiff, and Shirley.  Indeed, Illinois courts of equity favor having family disputes settled by agreement rather than resorting to law.  *Altheimer v. Harris,* 86 N.E.2d 229, 233 (Ill. 1949).  The Illinois Trusts and Trustee Act ("the Act") provides that matters that may be resolved by a nonjudicial settlement include, but are not limited to:

> (C)  exercise or nonexercise of any power by a trustee; . . .

> (E)  questions relating to property or an interest in property held by the trust; . . .

> (I)  liability or indemnification of a trustee for an action relating to the trust;

> (J)  resolution of disputes or issues related to administration, investment, distribution or other matters;

> (K)  modification of terms of the trust pertaining to administration of the trust; . . .

760 Ill. Comp. Stat. 5/16.1(d)(4).  An agreement entered into in accordance with this section "shall be final and binding on the trustee and all beneficiaries of the trust, both current and future, as if ordered by a court with competent jurisdiction over

- 13 -

all parties in interest." 760 Ill. Comp. Stat. 5/16.1(d)(6).
Settlements are favored by courts as a means of discouraging
needless litigation, and "family settlements are especially favored
on grounds of public policy upholding the honor and peace of
families." *Ham v. Marshall,* 196 N.E.2d 377, 380 (Ill. App. Ct.
1964). Such settlements are enforced by courts and bar subsequent
attempts to litigate matters covered by such agreements. *In re
Estate of Swanson*, 429 N.E.2d 892, 894 (Ill. App. Ct. 1981).

### 2. *The 2003 Agreement Bars Plaintiff's Fiduciary Duty Claims*

Under Illinois law, the 2003 Agreement is a non-judicial
"resolution of disputes or issues related to administration,
investment, distribution or other matters." 760 Ill. Comp.
Stat. 5/16.1(d)(4)(J). It contains a number of waivers and
releases that address Plaintiff's five claims for breach of
fiduciary duty.

#### a. *Count I – Accounting*

Plaintiff's first cause of action against Trustee is for
failure to provide a proper accounting. Plaintiff alleges that
Trustee, in violation of both Illinois law and her parents' trust
documents, failed to provide annual accountings. Indeed, Plaintiff
claims that Trustee refused repeatedly her requests for such
accountings.

Under the 2003 Agreement, however, Plaintiff waived expressly
her right to an accounting. Specifically, the Agreement states

"[i]n order to induce the Executor and Trustee to enter into and perform under this Agreement, Shirley and the Children hereby severally . . . waive any and all formal or other inventories and accountings from the Executor and the Trustee with respect to the Estate [and Upper Level Trusts]." Def.'s L.R. 56.1 Statement, Ex. 38 at 8-9. The Agreement also contained a release whereby Plaintiff

> "completely and irrevocably" released the Trustee "from and against any and all manner of actions, suits, debts, sums of money, accounts . . . claims and demands whatsoever, in law or in equity, which have arisen or may arise, directly or indirectly from or in connection with the administration of the Estate . . . , or with respect to, as a result of or arising from the act or acts, or failure or failures to act, including without limitations any failure to account," of Jerry as Executor or Trustee. . . .

*Id.* at 9. This waiver and release make it clear that Plaintiff waived her right to receive such accountings as part of the 2003 Agreement.

   b. *Count II - Failure to Distribute Trust Income*

   Plaintiff asserts that, according to her father's trust documents, the Trustee was required to disburse income from the trust to the beneficiaries at regular intervals. The documents stated that "[t]he trustee shall pay the income of the child's trust in convenient installments, at least quarterly, to the child during the child's lifetime." *See*, R. Mickelson Sec. Amend. Dec. of Trust, ECF No. 1-1 PageID# 41. Plaintiff claims the Trustee

- 15 -

failed to distribute trust income at least quarterly in violation of the trust document and his fiduciary duty.

The 2003 Agreement addresses this claim directly, as well. Section 9(a) of the Agreement, dealing with the Children's Subtrusts, states that "[t]he Parties acknowledge that although Bob's Trust directs the creation of the Children's Subtrusts as of the death of Shirley, there may, in fact, be a significant passage of time before allocations of remaining assets will be made to fund the Children's Subtrusts. . . ." Def.'s L.R. 56.1 Statement, Ex. 38 at 8-9. The Agreement goes on to list some of the reasons for the delay of such allocations. Thus, by signing the Agreement, it is clear that Plaintiff was not expecting to receive the quarterly disbursements she claims were withheld.

### c. Count III - Failure to Provide for Support

Plaintiff's third claim against Trustee is for failure to provide for support. She claims that, under her parents' trusts, the Trustee was required to exercise reasonable discretion to distribute to her such sums "as the trustee deems advisable from time to time for support of the child." Compl. ¶ 19. Support was defined in both trusts as "expenses for support in the beneficiary's accustomed manner of living, medical care and education. . . ." See, R. Mickelson Dec. of Trust, ECF No. 1-1 PageID# 28. Plaintiff claims that the Trustee failed to exercise reasonable discretion in distributing trust principal for

Plaintiff's support, and as a result, she is forced to live "in impoverished conditions" relying on friends and charitable organizations. Compl. ¶ 21. Plaintiff alleges that Trustee imposed unreasonable conditions to distributing trust assets for Plaintiff's support.

The Court first notes that the language of the trust documents placed support disbursements in the discretion of the Trustee, who was to make such disbursements "as the trustee deems advisable." *See*, R. Mickelson Sec. Amend. Dec. of Trust, ECF No. 1-1 PageID# 26. Such payments are thus not mandated at certain times or under specified conditions, but are left up to the Trustee. Moreover, as mentioned previously, in signing the 2003 Agreement, Plaintiff waived her right to sue Trustee for any failure of his to act while administering the trusts. Plaintiff's claim for failure to provide support payments falls under this waiver.

### d. Count IV – Improper Accounting of Trust Assets, Interest and Distributions

Plaintiff's fourth claim against Trustee is for improper accounting of assets, interest and distributions. Plaintiff claims that rather than making distributions for her support, Trustee instead characterized certain distributions to Judy as loans and repayment of purported debts, with interest. Plaintiff claims that Trustee has used debt he claims Plaintiff owes to the Estate to offset improper distributions Plaintiff believes she was owed.

- 17 -

This claim contradicts the 2003 Agreement, in which Judy acknowledged expressly that debts incurred by Plaintiff or 8765 [Mundy] "will be allocated and assigned to, or set off against, dollar-for-dollar, the Children's Subtrust for Judy." Def.'s L.R. 56.1 Statement, Ex. 38 at 8. Indeed, Plaintiff acknowledged and accepted specifically this allocation in the Agreement, which states "Judy, for herself and, by virtual representation, for any descendants she may hereafter have or adopt, hereby expressly consents to such allocation, setoff and assignment." *Id.* Plaintiff is thus now complaining about setoffs of her debt to which she agreed.

### e. Count V – Waste

On information and belief, Plaintiff asserts that the Trustee has asserted various charges against Plaintiff for legal fees. In addition, she claims on information and belief that the Trustee elected to acquire or retain non-income producing assets in the Trusts rather than covert them into assets that could generate income to support Plaintiff. Plaintiff claims that these actions constitute a waste of trust assets and a breach of fiduciary duties.

The Court first notes that, to the extent Plaintiff is claiming that the hiring of legal counsel with respect to the Estate is wasteful, the Trust documents granted Trustee the discretion to "employ agents, employees, attorneys, accountants,

- 18 -

financial and investment advisors, depositories and proxies and to delegate to them such discretionary and other powers as the trustee deems appropriate." *See*, R. Mickelson Dec. of Trust, ECF No. 1-1 PageID# 32. Moreover, as mentioned previously, in signing the 2003 Agreement, Plaintiff waived her right to sue Trustee for his actions while administering the trusts. Finally, Plaintiff has put forth no evidence supporting her claims of waste.

Thus, all five of Plaintiff's fiduciary duty claims are addressed and barred by the 2003 Agreement, which she executed on behalf of herself and 8756 Mundy's Landing Corp.

### 3. The 2003 Agreement Is Enforceable

Apparently realizing that the 2003 Agreement bars her fiduciary duty counts, Plaintiff claims that she was forced to sign the settlement agreement through coercion from the Trustee and under financial distress. Specifically, in Count VI of her Complaint, Plaintiff alleges:

> Jerry has coerced Judy to sign one or more instruments purporting to absolve him, and his attorneys, of any liability in connection with their actions or inactions with respect to the Trusts and their administration, including the failure to provide proper accounting to Judy (the "Releases"), and to consent to certain transactions with the Trusts that benefitted Jerry personally (the "Consents").

Compl. ¶ 42. Plaintiff claims that she signed these "Releases" and "Consents" under financial duress and through coercion from Trustee, in that "she had been denied financial means on which to

support herself, had been threatened with foreclosure of her home, was not provided access to independent counsel" and that she would not receive future distributions without signing the documents. *Id.* ¶ 43.  Plaintiff also claims she was induced fraudulently to execute the "Releases" and "Consents" because Trustee failed to disclose adequately the nature of the documents and their impact on Plaintiff's (and Trustee's) interests.  As such, she not only argues that such documents should not be the basis for denying her breach of fiduciary duty claims, but that they should be rescinded.

The Trustee, assuming that the 2003 Agreement is one of the documents Plaintiff claims she signed under duress and coercion, argues that her claim fails for three reasons:  (1) Plaintiff reaffirmed the 2003 Agreement repeatedly; (2) Plaintiff cannot establish facts establishing coercion or duress; and (3) Plaintiff's delay in bringing such a claim mitigates against raising it as grounds for avoiding the contract.  The Trustee is correct.

Duress is a defense to an otherwise valid contract.  *Pierce v. Atchison*, *T.&S.F. Ry.*, 65 F.3d 562, 569 (7th Cir. 1995).  Duress is not shown by "a difficult bargaining position or the pressure of financial circumstances."  *Id.*  Indeed, simply being in a precarious financial situation at the time an agreement is presented does not establish duress.  *Reardon v. AT&T,* No. 11 C 2577, 2012 U.S. Dist. LEXIS 22221 at *12 (N.D. Ill. Feb. 22, 2012).

Instead, there must be some "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another." *Pierce*, 65 F.3d at 569 (quoting *Herget Nat'l Bank v. Theede*, 537 N.E.2d 1109, 1111 (Ill. App. Ct. 1989)). One cannot claim duress as a defense to a contract when he had an alternative to signing the agreement. *Id.* "Where the issue of duress or business compulsion is raised it is pertinent to inquire whether the person charging duress has, by affirmative conduct or substantial delay following the transaction complained of, waived that defense." *Butler v. Metz, Train, Olson & Youngren, Inc.*, 379 N.E.2d 1255, 1263 (Ill. App. Ct. 1978).

First, Plaintiff provides no evidentiary support for her claim that she was forced to sign the agreement. While it appears clear that Plaintiff's Farm was causing her financial difficulties leading up to her signing the 2003 Agreement, the pressure of financial circumstances alone is not sufficient for a claim of duress. On top of that, Plaintiff's actions following her signing the agreement does not indicate she did so under duress. It is undisputed that after signing the 2003 Agreement, Plaintiff affirmed it repeatedly both through her acceptance of benefits under the terms of the Agreement and her subsequent execution of later agreements that referenced it. In addition, Trustee provided no less than eleven promissory notes signed by Plaintiff related to

loans she received from the Estate. *See*, Def.'s Rule 56.1 Statement ¶¶ 51-62. Each of these promissory notes incorporated by reference Plaintiff's obligations under the 2003 Settlement. *Id.*

Second, even if Plaintiff signed the 2003 Agreement under duress, an argument for which Plaintiff fails to provide any support, her delay in complaining about it is grounds alone for deeming that she has waived the right to complain about it now. For eight years following her execution of the 2003 Agreement, Plaintiff maintained ownership of the Farm while entering repeatedly into numerous loan agreements that referenced and incorporated that Agreement without claiming she did so under duress. Such a lengthy delay in raising the issue of duress "mitigates severely against recognizing it as a valid ground for avoiding the contract." *Butler*, 379 N.E.2d at 1263-64 (refusing to recognize duress as grounds to void a contract when allegations of duress raised almost six years after the transaction in question).

Based on the evidence presented by the Trustee, the lack of evidence produced by Plaintiff, and Plaintiff's eight-year delay in claiming duress, the Court finds that there are no genuine issues of material fact that could lead to a finding that Plaintiff signed the 2003 Agreement, or any of the subsequent releases or notes, under duress.

### C. Plaintiff's Claims Fail Regardless of 2003 Agreement

Even if the 2003 Agreement was invalid and rescinded, Plaintiff's breach of fiduciary duty claims would still fail. The Trustee argues that even if the 2003 Agreement did not resolve Plaintiff's claims, there are numerous reasons for such an outcome, including that Plaintiff's claims are barred by the statute of limitations and the doctrine of laches. Having found that Plaintiff's claims fail, the Court need not address all of the Trustee's arguments. However, the Court notes that even if the Agreement were invalid, or that the Trustee had breached his fiduciary duties, Plaintiff failed to produce any evidence that she suffered any damages.

To establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages. *Carter v. Carter*, 965 N.E.2d 1146, 1155 (Ill. App. Ct. 2012). As stated previously, Plaintiff provided no evidence to rebut the facts offered by Trustee. She simply states in her affidavit, without support, that:

> I estimate through my connections with my parents, investigations, known records, and disclosures that my parent's estate had one hundred million dollars upon their passing. Accounting for costs and taxes, I'm entitled to twenty million dollars.

Pl.'s Obj. to Summ. J., Ex. A ¶ 18, ECF No. 51. Plaintiff fails to provide or identify the "investigations, known records or

disclosures" to which she refers to support her statement. *See id.*
Nor does she explain why she stated in her Complaint that she
estimated the value of her parents' estate was significantly less.
*See* Compl. at 1 ("Although Judy has been denied access to adequate
information on which to base a precise valuation of the Trusts, she
estimates that the total value of her parents' estate exceeded $20
million."). Frankly, she fails to give the Court any indication of
how she determined she is owed $20 million dollars. Indeed, even
the Bluewater Consulting Group letter she attached to her response
concludes "[i]n our opinion, as of January 31, 2010, the amount due
to Judith Mickelson ('Judy') and/or the Children's Trusts for her
benefit is $966,213." Pl.'s Obj. to Summ. J., Ex. B.

While Plaintiff failed to provide any evidence of damages, the
Trustee proffered evidence that the value of the estate at the time
of Shirley's death was $7,029,392. *See* Def. SOF ¶ 9. Plaintiff
produced nothing to contest that value. In addition, the Trustee
produced evidence that since March 2008, three sets of
distributions were made to the children's subtrusts totaling an
equal value of $1,177,865.60 to each child. *Id.* ¶¶ 63-66.
Plaintiff did not address these distributions, or the supporting
materials provided by Trustee. As such, there is simply no
indication Plaintiff has suffered any damages.

For the foregoing reasons, the Court finds that there are no
genuine issues of material fact with respect to Plaintiff's claims

- 24 -

against the Trustee.  As such, summary judgment in the Trustee's favor is appropriate.

### D.  Plaintiff's Motion for Sanctions (ECF No. 46)

In response to Defendant's Motion for Summary Judgment, Plaintiff also filed a Motion for Sanctions.  Pl.'s Mot. for Sanctions, ECF No. 46.  In it, Plaintiff claims that "many of the documents" the Trustee submitted to support his summary judgment motion were privileged, and that her former counsel stated that he did not turn such documents over to Trustee.  *Id.* at 1.  Plaintiff also claims she never received many of the documents during discovery, and that some of them are "actually fraudulently created documents not actually endorsed by plaintiff."  *Id.*  Attached to the Motion is the same "Answers to their Pleadings" that Plaintiff attached to her opposition to summary judgment.  Plaintiff "asks the Court to determine how:  defendant obtained such documents and why such documents were not disclosed and why said documents are false."  *Id.*

The Trustee responds that all of the documents cited in its Summary Judgment Motion were produced either by the Trustee or the Plaintiff.  In support of its response, the Trustee includes the affidavit of one of its counsel, Gwen G. Nolan, as well as numerous discovery-related correspondence between the Trustee and Plaintiff's former counsel, Lloyd Chatfield II, related to the production of documents.  It appears that tens of thousands of

pages of documents were produced during this litigation, and the Court is satisfied that the documents Trustee relied upon for its Summary Judgment Motion were among them as they are all Bates stamped as having been produced by one of the parties.

Plaintiff provides no evidence for her unsupported claims that some of the documents were falsified, and the Court refuses to assess sanctions based on such bald assertions. Plaintiff's claim that some of the documents are privileged is more problematic, as some of the documents do appear to be communications between Plaintiff and her prior attorney. *See, e.g.,* Def's. Rule 56.1 Statement, Ex. 13. The Trustee points out that at no time prior to the filing of the Trustee's Summary Judgment Motion did Plaintiff or her prior counsel notify Trustee that any privileged documents were produced inadvertently. Despite this, the Court is wary of considering potentially privileged information that a *pro se* plaintiff's former attorney may have produced inadvertently without her knowledge. As such, the Court has not considered any document that clearly appeared to be a communication solely between Plaintiff and her formal counsel in granting the Trustee's Motion for Summary Judgment. However, the fact that Defendant included such documents with its Motion is certainly not sanctionable conduct when the Trustee received no previous notice from Plaintiff that the documents were privileged.

- 26 -

As Plaintiff has provided no support for her claim that some of the documents upon which Defendant relied were falsified, and none of Defendant's conduct appears improper, Plaintiff's Motion for Sanctions (ECF No. 46) is denied.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion for Summary Judgment (ECF No. 38) is granted and Plaintiff's Motion for Sanctions (ECF No. 46) is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: July 18, 2013